## In re CYPRESS FOODS, INC., Debtor.

### No. 02–00016–8P1.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

May 23, 2002.

Herbert R. Donica, Herbert R. Donica, P.A., Tampa, FL, for debtors.

Eric S. Golden, Baker & Hostetler, Orlando, FL, for movant.

Andrea P. Bauman, Highland City, FL, trustee.

David S. Jennis, Jennis & Bowen, P.L., Tampa, FL, for trustee.

John A. Anthony, Shackleford, Farrior, et al., Tampa, FL, for Petitioning Creditors.

*ORDER ON IMPERIAL PREMIUM FINANCE INC.'S MOTION FOR RELIEF FROM THE AUTOMATIC STAY, OR IN THE ALTERNATIVE, ADEQUATE PROTECTION*

(Doc. No. 107)

ALEXANDER L. PASKAY, Bankruptcy Judge.

The Motion under consideration is filed by Imperial Premium Finance, Inc. (Imperial), who is seeking relief pursuant to Sections 361 and 362 of the Bankruptcy Code. While the Motion is titled "Imperial Premium Finance Inc.'s Motion for Relief from Automatic Stay, or, in the Alternative, Adequate Protection," Imperial seeks an order annulling and terminating the automatic stay, *nunc pro tunc* as of January 2, 2002, or in the alternative seeks an Order requiring the debtor, Cypress Foods, Inc. (Debtor) to furnish adequate protection.

The Motion is filed in a Chapter 11 case in which this Court entered an Order on February 27, 2002, and revoked the Debtor's authority and status as a Debtor–In–Possession and appointed Ms. Andrea Bauman as Trustee pursuant to Section 1104 of the Code. She is currently in charge of the administration of the estate of the Debtor.

The Motion under consideration is not the usual motion by a party who claims to be a creditor and seeks to protect a specific collateral. This Motion is filed by Imperial, who claims to be a secured creditor asserting a cognizable interest in a currently non-existing collateral. In order to put the present matter into an understandable posture, the following facts as appear from the record should be helpful.

On September 6, 2001, the Debtor and Imperial entered into a Premium Finance Agreement (Agreement) for the purpose of financing the insurance premium payments on a policy issued by C.N.A./Lloyds of London, insuring the Debtor against malfeasance or misfeasance by officers and directors of the Debtor. The financing agreement provided, *inter alia*, that Imperial shall have a security interest in any unearned premiums, loss payments and any related interest arising under a state guarantee fund.

It is without dispute that Imperial paid the full payment to the insurance carrier and the policy is currently in full force and effect and will not expire until September 2002. The total policy premium is $63,838.26 out of which $51,070.61 is financed. The amount the Debtor is to pay Imperial, including the finance charges, is $5,887.04 in nine equal installments. It is without dispute that the Debtor has defaulted under the Agreement by failing to

make the installments due on December 6, 2001 and all following months.

The precise relief sought, contrary to the matter set forth in the Motion is to obtain leave from this Court to authorize Imperial to cancel the policy in order to create an unearned premium fund. According to Imperial, it has a valid security interest and is entitled to receive these monies if and when rebated by the insurance company, as payment of the still outstanding balance owed to Imperial by the Debtor, which amount of indebtedness is not in dispute.

The request by Imperial to annul the automatic stay, *nunc pro tunc*, effective January 2, 2002, is of course not warranted by facts or applicable law at all. And for this reason, the request for annulment *nunc pro tunc* should be denied outright.

This leaves for consideration the threshold question of whether or not Imperial is, in fact, a secured creditor holding a valid enforceable security interest in the unearned premiums, if and when such rebate is made by the insurance company. Once this question is answered in the affirmative, the first question is, of course, whether or not Imperial should be permitted to cancel the policy in question in order to create a fund based on unearned premiums. The second question is, should the Debtor provide adequate protection, if any, in order to prevent granting the relief sought by Imperial at this time.

In her Response to the Motion, the Trustee takes the position that the claimed security interest is governed by Article 9 of the Uniform Commercial Code (UCC) as adopted by the State of Florida, Fla. Stat. 679 et seq. And since Imperial filed no Financing Statement, its claimed security interest in unenforceable against the Trustee by virtue of Fla. Stat. § 679.304.

Imperial contends that the interest in question is excluded from the coverage of Article 9 of the UCC and, upon execution of the Financing Agreement, is effective and does not require any perfection. To resolve this question requires this Court to construe the reach and the scope of Article 9 of the UCC as adopted by Florida, especially as set forth in Fla. Stat. § 679.1091, which provides in Subclause (3)(h) that:

(3) This chapter does not apply to the extent that:

    (h) A transfer of an interest in or an assignment of a claim under a policy of insurance, other than an assignment by or to a health-care provider of a health-care insurance receivable and any subsequent assignment of the right to payment, but Fla. Stat. 679.3151 and 679.322 apply with respect to proceeds and priorities in proceeds . . . .

It should be noted that effective January 1, 2002, the UCC, consisting of Chapter 679 was repealed by the Florida legislature and new provisions were enacted. Fla. Stat. § 679.1091 was replaced by Fla. Stat. § 679.104, "Transactions excluded from chapter," which provides that "This chapter does not apply . . . (7) To a transfer of an interest or claim in or under any policy of insurance except as provided with respect to proceeds (s.679.306) and priorities in proceed (s.679.312)." Notwithstanding, the existing laws in this case govern the parties at the time of the Agreement, which is the former UCC provision cited above.

In support of its position, Imperial relies on the case of *In re Braniff Airlines,* 164 B.R. 820 (Bankr.E.D.N.Y.1994). In *Braniff,* the debtor also financed the insurance premiums covering certain equipment and procured aviation insurance. The premiums were financed for Braniff by Cross-

land Premium Funding, Inc. In *Braniff*, pursuant to the Banking and Insurance Laws of the State of New York, refunds of unearned premiums were to be returned to the premium finance agency for the benefit of the insured. *Braniff*, 164 B.R. at 823. In considering the claimed security interest of Crossland, who had a similar financing agreement with Braniff, the Bankruptcy Court concluded that under Section 9–104 of the UCC as adopted in New York, the funds representing a refund from unearned premiums were within the exclusion of the Statute which provides "[t]his Article does not apply ... to a transfer of an interest or claim in or under any policy of insurance ...." *Braniff*, 164 B.R. at 831.

Imperial also relies on the case of *In re Big Squaw Mountain Corp.*, 122 B.R. 831 (Bankr.D.Maine 1990). In *Big Squaw*, the funds were already in existence held by the trustee, which represented the refund for unearned insurance premiums on the policies previously insuring the debtor when A–I Credit Corp. financed the premiums. The Bankruptcy Court in *Big Squaw* held that the agent's interest pursuant to a premium financing agreement in unearned insurance premiums was an "interest" in or under the policy of insurance, thus not subject to the UCC as adopted by Maine. *Big Squaw*, 122 B.R. at 838. Thus, the agent did not have to file a notice of assignment or take possession of the policies in order to perfect the interest.

To overcome the holding of these cases, the Trustee contends that the insurance policy in question is property of the estate under Section 541(a) of the Code; that the Trustee might have a claim on the policy against the insurance company based on the conduct of the officers and directors of the Debtor while they were in control of the Debtor. And, if the relief is granted to Imperial, the Trustee is losing a valuable

right and that should not be put in jeopardy because the relief sought by Imperial is not warranted either by the facts or by the applicable law.

In this connection, the Trustee points out that the exclusion from the scope of Article 9 by Fla. Stat. § 679.1091(3)(h) refers to an interest in a claim in a policy or under the policy if made by the insured by the insurance company or made by an assignee of the insured, and it does not cover the insured claim for refund of unearned premiums which under the insurance contract the insurance company is required to refund if the policy is cancelled prior to the contractual expiration date.

In the present instance, unlike in *Big Squaw*, there are no funds in existence. And, the dispute is not centered around who has the right to the funds, but the relief sought is to permit Imperial to cancel the policy in order to create the res on which its claimed security interest would attach. This Court is inclined to reject the relief sought by Imperial at this time in order to give the Trustee reasonable time to decide whether or not to assert the claim under the policy based on the alleged misconduct of the officers and directors of the Debtor.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED that Imperial Premium Finance Inc.'s Motion for Relief from Automatic Stay, or, in the Alternative, Adequate Protection Motion be, and the same is hereby, denied without prejudice. It is further

ORDERED, ADJUDGED AND DECREED that the Trustee shall file a status report not later than 45 days from the entry of this Order regarding her whether or not she has pursued a claim pursuant to the Policy. In the event no report is filed or the Trustee indicates that she will not

pursue the matter, stay will be lifted in favor of Imperial *ex parte*.